**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BRIAN J. ALTMAN & ASSOCIATES, P.C.,

    Plaintiff/Counter-Defendant,

v.                                                             Case No. 08-CV-10810-DT

FOOT AND ANKLE HEALTH CENTERS, P.C.
and KENNETH D. POSS,

    Defendants/Counter-Plaintiffs/Third-Party
    Plaintiffs,

and

METRO HEALTH, INC.,

    Third-Party Plaintiff

v.

BRIAN J. ALTMAN & ASSOCIATES, P.C.,
ALTMAN HOLDINGS AND INVESTMENTS,
LLC, and BRIAN J. ALTMAN

    Third-Party Defendants

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
TWO MOTIONS TO DISMISS, GRANTING EX PARTE MOTION, AND
CONVERTING THE HEARING TO A SCHEDULING CONFERENCE**

Before the court are two motions to dismiss, filed by the Counter-Defendant and Third-Party Defendants in this matter. The motions have been fully briefed, and the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant in part and deny in part the motions.

## I. INTRODUCTION

Plaintiff Brian J. Altman & Associates, P.C. ("Altman & Associates") initiated this action on February 27, 2008, and amended its complaint on March 25, 2008. Defendant Foot & Ankle Health Centers, P.C. ("Foot & Ankle") is a medical practice specializing in foot and ankle care which is owned and operated by Defendant Kenneth D. Poss, D.P.M. (Am. Compl. ¶ 6.) Foot & Ankle maintains offices and services podiatry patients in Michigan and Florida, including in Novi, Michigan, Livonia, Michigan, Detroit, Michigan, and Delray Beach, Florida (collectively, the "Practices"). (*Id.*) Sometime around April 2007, Altman & Associates entered into negotiations with Dr. Poss to purchase the Practices and, according to the Amended Complaint, the negotiations escalated after Foot & Ankle made representations related to Dr. Poss's reputation in the medical community and after Foot & Ankle represented that Dr. Poss had not engaged in any prior illegal conduct. (*Id.* at ¶ 7-8.) Continuing its due diligence, Altman & Associates requested a review of current financial statements, which Foot & Ankle allowed after a $150,000 deposit was wired into the escrow account of its attorneys, Seyburn, Kahn, Ginn, Bess and Serlin, P.C. (the "Seyburn Law Firm"). (*Id.* at ¶¶ 9-13.) Altman & Associates later discovered that on March 22, 1991, Dr. Poss was convicted of four counts of filing false claims for payment of health care benefits and that on March 4, 1992, Dr. Poss's medical license was suspended for forty-five days by the Board of Podiatric Medicine and Surgery. (*Id.* at ¶ 15.) Thus, on October 1, 2007, Altman & Associates terminated further negotiations with Foot & Ankle and requested that its deposit be released from escrow. (*Id.* at ¶¶ 16 & 18.) Foot & Ankle and Dr. Poss refused. Altman & Associates filed the instant lawsuit alleging that Foot &

Ankle and Dr. Poss breached an express or implied agreement to release the deposit if either party terminated negotiations to purchase the Practices.  The Amended Complaint also seeks a declaratory judgment that the deposit should be returned to Altman & Associates.

On June 4, 2008, Defendants Foot & Ankle and Dr. Poss filed their answer to Altman & Associates' Amended Complaint.  Included in the same document, they also filed a "Counterclaim."  The "Counterclaim" was asserted by Foot & Ankle and Dr. Poss *and also by* "Counter-Plaintiff" Metro Health, Inc., *who had not yet been a party on the docket*.  Equally problematic, the "Counterclaim" was asserted against Altman & Associates and *also against* Brian J. Altman, *who had not yet been a party on the docket*.  Apparently recognizing the incorrect designation and docketing of their "Counterclaim," Defendants filed two subsequent documents on June 9, 2008: (1) an "Amended Counterclaim" filed by only Foot & Ankle and Dr. Poss against only Altman & Associates and (2) a "Third Party Complaint" filed by Metro Health, Inc., Foot & Ankle, and Dr. Poss against Altman & Associates and also against Altman Holdings and Investments, LLC ("Altman Holdings") and Brian J. Altman.

The Amended Counterclaim agrees that in 2007 Altman & Associates began negotiating the potential purchase of certain assets in Michigan and Florida owned or operated by Foot & Ankle and Dr. Poss, including, but not limited to certain healthcare clinics, equipment, and real property.  (Am. Counterclaim at ¶ 6.)  Foot & Ankle and Dr. Poss assert, however, that the $150,000 provided by Altman & Associates was not a deposit but was instead earnest money.  (*Id.* at ¶ 8.) The Amended Counterclaim further asserts that on August 2, 2007, Altman & Associates executed an Asset Purchase and

3

Sales Agreement with Foot & Ankle (*id.* at ¶ 7) and a Podiatry Service Agreement with Dr. Poss (*id.* at ¶ 9).  The Amended Counterclaim also asserts that on September 17, 2007, Altman & Associates executed a Term Sheet affirming its agreement to purchase the three Michigan practices, two parcels of real property, and one Florida practice.  (*Id.* at ¶ 10.)  Foot & Ankle and Dr. Poss claim that, in reliance upon both "the course of dealings between the parties as well as the agreements and Terms Sheet executed by [Altman & Associates, Foot & Ankle and Dr. Poss], they made preparation for transfer of certain assets and healthcare practices to [Altman & Associates]" (*id.* at ¶ 10) and were damaged when Altman & Associates "failed to fulfill its obligations" (*id.* at ¶ 12).  The Amended Counterclaim asserts two counts.   Count I is entitled "Breach of Express Contract" and asserts that Altman & Associates breached express contracts to purchase healthcare practices and to employ Dr. Poss.  (*Id.* at ¶¶ 14-15.)  Count II is entitled "Breach of Implied Contract" and asserts that Altman & Associates "through its course of dealings and agreements, entered into implied contracts . . .  for the purchase of real property located in Detroit and Livonia, Michigan, healthcare practices, and to employ . . .  Poss."  (*Id.* at ¶ 18.)

The Third-Party Complaint makes allegations substantially similar to those in the Amended Counterclaim, but adds additional parties engaged in the sales negotiations.  Specifically, the Third-Party Complaint asserts that in mid-2007, Foot & Ankle, Dr. Poss *and Metro Health* began negotiations with Altman & Associates *and also with Altman Holdings and Brian Altman*.  (Third-Party Compl. at ¶ 9.)  The Third-Party Complaint further asserts that on August 2, 2007, Altman & Associates executed an Asset Purchase and Sales Agreement with Foot & Ankle *and Metro Health* (*id.* at ¶ 10), and

4

on the same day, *Altman Holdings* executed two Real Estate Sales Contracts by Owner with Dr. Poss for real property located in Livonia, Michigan (*id.* at ¶ 11) and in Detroit, Michigan (*id.* at ¶ 13). The Third-Party Complaint alleges that Altman Holdings forwarded $100,000.00 as earnest money for the purchase of the real property located in Livonia (*id.* at ¶ 12) and $50,000.00 as earnest money, for certain real property located in Detroit, Michigan (*id.* at ¶ 14). The Third-Party Complaint further alleges that Brian Altman executed a personal guaranty as an inducement for Dr. Poss to agree to perform podiatry services for Altman & Associates. (*Id.* at ¶ 15.) Finally, the Third-Party Compliant claims that on September 17, 2007, Altman & Associates, executed a Term Sheet affirming its agreement to purchase healthcare practices from Foot & Ankle and Metro Health. (*Id.* at ¶ 16.) Like the Amended Counterclaim, the Third-Party Complaint asserts that, in reliance upon both "the course of dealings between the parties as well as the agreements and Terms Sheet executed by Third-Party Defendants, Third-Party Plaintiffs made preparation for transfer of certain assets and healthcare practices to Third-Party Defendants (*id.* at ¶ 17) and were damaged when "Third-Party Defendants failed to fulfill their obligations to purchase the real property and complete the transfer of certain assets and healthcare practices from Third-Party Plaintiffs to Third-Party Defendants" (*id.* at ¶ 18). The Third-Party Complaint asserts claims for breach of express contracts and breach of implied contracts.

On July 8, 2008, Altman & Associates filed a motion to dismiss the Amended Counterclaim and Altman & Associates, Altman Holdings, and Brian Altman (collectively, the "Altman Entities" or "Third-Party Defendants") filed a motion to dismiss the Third-Party Complaint. The motions allege that the claims against the Altman

5

Entities should be dismissed because the pleadings fail to state a claim for breach of an express contract and the claims for breach of implied contract are barred by the statute of frauds and/or fail to state a claim.

## II. STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans-Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 466 (6th Cir. 2000).

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (citing Fed. R. Civ. P. 8(a)). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 127 S.Ct. 1955). In application, a "complaint must contain either direct or inferential allegations respecting all the material

6

elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, *and exhibits attached to the complaint*, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis added) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### III. DISCUSSION

### A. Breach of Express Contracts

The Third-Party Complaint alleges that the Altman Entities entered into express contracts to purchase real property located in Detroit and Livonia as well as express contracts to purchase the healthcare practices. (Third-Party Compl. at ¶¶ 20, 24.) Likewise, the Amended Counterclaim asserts that Altman & Associates entered into an express contract to purchase healthcare practices and to employ Dr. Poss. (Am. Counterclaim at ¶ 14.) The Altman Entities contend that all of the breach of express contracts claims asserted, both in the Counterclaim and Third-Party Complaint, must be dismissed because the contracts attached to the pleadings are not signed by the Altman Entities. Thus, the Altman Entities contend that the Counterclaim and Third-Party Complaint fail to state a claim because (1) there is no allegation of an acceptance of any offer and (2) the allegations contained within the pleadings do not satisfy the statute of frauds with respect to the sale of real estate.

7

Both of these arguments must be rejected at this stage of the litigation. First, the court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995). Here, the Counterclaim and Third-Party Complaint assert that the parties entered into express agreements which the Altman Entities subsequently breached. If proven at trial, with supporting evidence, the Amended Counterclaim and Third-Party Complaint adequately state claims for breach of express contracts. Counter-Plaintiffs and Third-Party Plaintiffs are not required, at this stage to produce the documents on which they will subsequently rely. It is enough, at the Rule 12(b)(6) stage, that the allegations in the pleadings, if proven, would sustain a cause of action.

The court must also reject the Altman Entities' statute of frauds argument as it relates to the breach of express contracts. The Amended Counterclaim and Third-Party Complaint sufficiently allege that the Altman Entities breached written express contracts. The fact that the documents originally attached to the pleadings may not have been executed is immaterial at the Rule 12(b)(6) stage. It is enough that the pleadings adequately allege the existence of written documents.

Additionally, after the pending motions were fully briefed, Counter-Plaintiffs/Third-Party Plaintiffs Foot and Ankle, Kenneth Poss and Metro Health filed a motion to file a supplemental brief.[1] Although it is not necessary to submit evidence in response to a Rule 12(b)(6) motion, Counter-Plaintiffs and Third-Party Plaintiffs seek to file, as exhibits, fully executed copies of at least some of the contracts at issue: the Asset

---

[1] The court will grant the motion and consider the supplemental "brief" which is in essence simply a mechanism for the court to consider the attached exhibits.

Purchase and Sale Agreement, purportedly signed by Brian Altman as President of Altman & Associates; two Real Estate Contracts by Owner, purportedly signed by Brian Altman, with a signature line for Altman Holdings; and a Podiatry Service Agreement, purportedly signed by Brian Altman for Altman & Associates. The court expresses no opinion as to the authenticity of these documents but notes that these documents provide further context to the allegations made in the pleadings.

Because the Amended Counterclaim and the Third-Party Complaint adequately set forth allegations which, if proven, would support a claim for breach of express contracts, the two motions to dismiss these claims must be denied.

## B. Breach of Implied Contracts

Counter-Plaintiffs and Third-Party Plaintiffs also assert, as an alternate theory of relief,[2] that through their course of dealings, agreements, guarantees and deposits an implied contract was formed with the Altman Entities for the Altman Entities to "purchase real property located in Detroit and Livonia, Michigan, healthcare practices, and to employ Third-Party Plaintiff Kenneth Poss." (Third-Party Compl. at ¶ 24; Am. Counterclaim at ¶ 18.) The Counterclaim and Third-Party Complaint allege that the Altman Entities breached their implied contracts, causing Counter-Plaintiffs and Third-Party Plaintiffs to be damaged.

"The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation."

---

[2] Under Michigan law, a plaintiff is entitled to bring alternative counts for breach of contract and quantum meruit. *H.J. Tucker and Assocs., Inc. v. Allied Chucker and Eng'g Co.,* 595 N.W.2d 176, 188 (Mich. Ct. App. 1999).

*Mallory v. City of Detroit*, 449 N.W.2d 115, 118 (Mich. Ct. App.1989) (citation omitted). "An implied contract must also satisfy the elements of mutual assent and consideration." *Id.* Under Michigan law, contracts can be implied in law or implied in fact. *In re Lewis Estate,* 423 N.W.2d 600, 603 (Mich. Ct. App.1988). Although the pleadings do not indicate which type of implied contract they rely upon, it appears that Counter-Plaintiffs and Third-Party Plaintiffs rely on a contract implied in fact:

> A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.

*Sutton v. Cadillac Area Public Schools,* 323 N.W.2d 582, 585 (Mich. Ct. App. 1982) (quotations and internal citations omitted).[3] Because the pleadings speak of a "course of dealings" between the parties, it is likely that Counter-Plaintiffs and Third-Party Plaintiffs assert a contract implied in fact.

The Altman Entities argue that the implied in fact contract claim must be dismissed because (1) the statute of frauds bars any implied contract claim for the sale of real estate, (2) the statute of frauds bars any implied contract claim for employment contracts over one year, and (3) in any event, the pleadings fail to allege specific facts to support a cause of action for establishing an implied in fact contract.

---

[3]Conversely, "[a] contract implied in law is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." *In re Lewis Estate,* 423 N.W.2d at 603 (citation omitted).

10

First, with respect to the real estate implied contract claim, it is true that Michigan law requires contracts for real estate to be in writing. The Michigan statute of frauds provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

Mich. Comp. Laws § 566.106. Thus, to survive a challenge under the statute of frauds, a contract for the sale of land must be (1) in writing and (2) signed by the seller or someone lawfully authorized by the seller in writing. *Zurcher v. Herveat,* 605 N.W.2d 329, 334 (Mich. Ct. App. 1999). Here, Counter-Plaintiffs and Third-Party Plaintiffs do not even respond to the Altman Entities' argument that the statute of frauds bars an implied in fact contract for the sale of real estate. Indeed, it appears, based on the progression of the briefs, that Counter-Plaintiffs and Third-Party Plaintiffs intend to rely on their express contract claim instead. Accordingly, the court will grant the motions to dismiss as to any claim for breach of an implied contract to sell real estate.

Second, the Altman Entities contend that the statute of frauds also bars any claim that they breached an implied contract to employ Dr. Poss. Under Michigan law, any agreement which "by its terms, is not to be performed within 1 year from the making of the agreement" must be "in writing and signed with an authorized signature by the party to be charged with the agreement." Mich. Comp. Laws § 566.132(1)(a). The Altman Entities contend that this provision bars any action for oral or implied

employment contracts over one year. The Altman Entities cite as support *Drummey v. Henry*, 320 N.W.2d 309 (Mich. Ct. App. 1982), in which the Michigan Court of Appeals stated that "[a]t the outset, we note that an oral employment contract not to be performed within one year of its making is unenforceable under the statute of frauds." *Id.* at 311-312. The court, however, continued:

> Also, oral employment contracts for an indefinite term, in the absence of distinguishing features, are terminable at the will of either party. *Lynas v. Maxwell Farms*, 279 Mich. 684, 687, 273 N.W. 315 (1937). *Being terminable at will, indefinite term employment contracts are not generally regarded as being within the statute since the possibility exists that the contract may be terminated in less than a year from its making. Adolph v. Cookware Co. of America*, 283 Mich. 561, 278 N.W. 687 (1938). 2 Corbin on Contracts, §§ 446-447, pp. 549-556. Finally, we note that if there is any possibility that an oral contract is capable of being completed within a year, it is not within the statute of frauds, even though it is clear that the parties may have intended and thought it probable that it would extend over a longer period, and even though it does so extend. *Rowe v. Noren Pattern & Foundry Co.*, 91 Mich. App. 254, 283 N.W.2d 713 (1979), lv. den. 409 Mich. 880 (1980).

*Id.* at 312 (emphasis added). In light of the emphasized language, the court cannot conclude, at the Rule 12(b)(6) stage, that any implied in fact contract to employ Dr. Poss *necessarily* falls within the statute of frauds.[4] The motions to dismiss this claim will therefore be denied.

---

[4] The Term Sheet attached to the Third Party Complaint and Amended Counterclaim provides that Dr. Poss will receive $525,000 per year for a period of three years pursuant to the terms of an Independent Contractor Agreement. The Podiatry Service Agreement attached to the Amended Counterclaim, however, provides that Dr. Poss will be employed for terms of one year, renewable for three years. Nonetheless, the allegations within the Third Party Complaint and Amended Counterclaim are silent as to a duration of employment. Accordingly, the court cannot conclude that any implied contract Dr. Poss may have entered into necessarily falls within the statute of frauds.

Finally, the Altman Entities contend that the pleadings fail to allege specific facts to support a cause of action for establishing an implied contract for the sale of the healthcare practices or for the employment of Dr. Poss. The court disagrees. The pleadings adequately set forth facts which, if proven, establish a course of conduct sufficient to sustain a cause of action for breach of implied contract. Counter-Plaintiffs and Third-Party Plaintiffs detail a series of negotiations and good faith efforts between the parties, as outlined in the Background section of this Order, which "according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract." *Sutton v. Cadillac Area Public Schools,* 323 N.W.2d 582, 585 (Mich. Ct. App. 1982). Accordingly, the court will deny the motions to dismiss on this argument.

## IV. CONCLUSION

IT IS ORDERED that the two motions to dismiss filed on July 8, 2008 [Dkt. ## 23 & 24] are GRANTED IN PART and DENIED IN PART. They are GRANTED as to any claim for breach of an implied contract to sell real estate. They are DENIED in all other respects.

IT IS FURTHER ORDERED that "Ex Parte Motion To File Combined Supplemental Brief" [Dkt # 29] is GRANTED.

Finally, IT IS ORDERED that the October 15, 2008 hearing is CONVERTED to a scheduling conference which trial counsel are required to attend. The scheduling conference will commence on **October 15, 2008 at 3:30 p.m.**

     S/Robert H. Cleland
     ROBERT H. CLELAND
     UNITED STATES DISTRICT JUDGE

Dated: October 14, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 14, 2008, by electronic and/or ordinary mail.

     S/Lisa Wagner
     Case Manager and Deputy Clerk
     (313) 234-5522