UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN J. ALTMAN & ASSOCIATES, P.C.,

    Plaintiff/Counter-Defendant,

v.        Case No. 08-CV-10810-DT

FOOT AND ANKLE HEALTH CENTERS, P.C.
and KENNETH D. POSS,

    Defendants/Counter-Plaintiffs/Third-Party
    Plaintiffs,

and

METRO HEALTH, INC.,

    Third-Party Plaintiff,

v.

BRIAN J. ALTMAN & ASSOCIATES, P.C.,
ALTMAN HOLDINGS AND INVESTMENTS,
LLC, and BRIAN J. ALTMAN

    Third-Party Defendants.

                                          /

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR SANCTIONS**

Before the court is a motion for summary judgment and request for sanctions, filed by the Counter-Defendant and Third-Party Defendants in this matter. The motion has been fully briefed, and the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

## I. BACKGROUND[1]

Plaintiff Brian J. Altman & Associates, P.C. ("Altman & Associates") initiated this action on February 27, 2008, and amended its complaint on March 25, 2008. Defendant Foot & Ankle Health Centers, P.C. ("Foot & Ankle") is a medical practice specializing in foot and ankle care which is owned and operated by Defendant Kenneth D. Poss, D.P.M.  (Am. Compl. ¶ 6.)  Foot & Ankle maintains offices and services podiatry patients in Michigan and Florida, including in Novi, Michigan, Livonia, Michigan, Detroit, Michigan, and Delray Beach, Florida (collectively, the "Practices").  (*Id.*) Sometime around April 2007, Altman & Associates entered into negotiations with Dr. Poss to purchase the Practices and, according to the Amended Complaint, the negotiations escalated after Foot & Ankle made representations related to Dr. Poss's reputation in the medical community, and after Foot & Ankle represented that Dr. Poss had not engaged in any prior illegal conduct.  (*Id.* at ¶ 7-8.)  Continuing its due diligence, Altman & Associates requested a review of current financial statements, which Foot & Ankle allowed after a $150,000 deposit was wired into the escrow account of its attorneys, Seyburn, Kahn, Ginn, Bess and Serlin, P.C. (the "Seyburn Law Firm"). (*Id.* at ¶¶ 9-13.)  Altman & Associates later discovered that on March 22, 1991, Dr. Poss was convicted of four counts of filing false claims for payment of health care benefits and that on March 4, 1992, Dr. Poss's medical license was suspended for forty-five days by the Board of Podiatric Medicine and Surgery.  (*Id.* at ¶ 15.)  Thus, on October 1, 2007, Altman & Associates terminated further negotiations with Foot & Ankle and

---

[1]The Background facts are taken from previous orders of the court.

requested that its deposit be released from escrow.  (*Id.* at ¶¶ 16 & 18.)  Foot & Ankle and Dr. Poss refused to release the funds.  Altman & Associates then filed the instant lawsuit alleging that Foot & Ankle and Dr. Poss breached an express or implied agreement to release the deposit if either party terminated negotiations to purchase the Practices.  The Amended Complaint also seeks a declaratory judgment that the deposit should be returned to Altman & Associates.

On June 4, 2008, Defendants Foot & Ankle and Dr. Poss filed their answer to Altman & Associates' Amended Complaint.  Included in the same document, they also filed a "Counterclaim."  Because the "Counterclaim" contained various procedural defects, Defendants filed two subsequent documents on June 9, 2008: (1) an "Amended Counterclaim" filed by Foot & Ankle and Dr. Poss against Altman & Associates and (2) a "Third Party Complaint" filed by Metro Health, Inc., Foot & Ankle, and Dr. Poss against Altman & Associates, and Altman Holdings and Investments, LLC ("Altman Holdings"), and Brian J. Altman.

The Amended Counterclaim agrees that in 2007 Altman & Associates began negotiating the potential purchase of certain assets in Michigan and Florida owned or operated by Foot & Ankle and Dr. Poss, including, but not limited to, certain healthcare clinics, equipment, and real property. (Am. Countercl. at ¶ 6.)  Foot & Ankle and Dr. Poss assert, however, that the $150,000 provided by Altman & Associates was not a deposit but was instead earnest money.  (*Id.* at ¶ 8.) The Amended Counterclaim further asserts that on August 2, 2007, Altman & Associates executed an Asset Purchase and Sales Agreement with Foot & Ankle (*id.* at ¶ 7) and a Podiatry Service Agreement with Dr. Poss (*id.* at ¶ 9).  The Amended Counterclaim also asserts that on September 17,

2007, Altman & Associates executed a Term Sheet affirming its agreement to purchase the three Michigan practices, two parcels of real property, and one Florida practice. (*Id.* at ¶ 10.) Foot & Ankle and Dr. Poss claim that, in reliance upon both "the course of dealings between the parties as well as the agreements and Terms Sheet executed by [Altman & Associates, Foot & Ankle and Dr. Poss], they made preparation for transfer of certain assets and healthcare practices to [Altman & Associates]" (*id.* at ¶ 10) and were damaged when Altman & Associates "failed to fulfill its obligations" (*id.* at ¶ 12). The Amended Counterclaim asserts two counts. Count I is entitled "Breach of Express Contract" and asserts that Altman & Associates breached express contracts to purchase healthcare practices and to employ Dr. Poss. (*Id.* at ¶¶ 14-15.) Count II is entitled "Breach of Implied Contract" and asserts that Altman & Associates "through its course of dealings and agreements, entered into implied contracts . . . for the purchase of real property located in Detroit and Livonia, Michigan, healthcare practices, and to employ . . . Poss." (*Id.* at ¶ 18.)

The Third-Party Complaint makes allegations substantially similar to those in the Amended Counterclaim but adds additional parties engaged in the sales negotiations. Specifically, the Third-Party Complaint asserts that in mid-2007, Foot & Ankle, Dr. Poss and Metro Health (the "Poss Entities") began negotiations with Altman & Associates and also with Altman Holdings and Brian Altman. (Third-Party Compl. at ¶ 9.) The Third-Party Complaint further asserts that on August 2, 2007, Altman & Associates executed an Asset Purchase and Sales Agreement with Foot & Ankle and Metro Health (*id.* at ¶ 10), and on the same day, Altman Holdings executed two Real Estate Sales Contracts by Owner with Dr. Poss for real property located in Livonia, Michigan (*id.* at ¶ 11) and in

Detroit, Michigan (*id.* at ¶ 13).  The Third-Party Complaint alleges that Altman Holdings forwarded $100,000.00 as earnest money for the purchase of the real property located in Livonia (*id.* at ¶ 12) and $50,000.00 as earnest money for certain real property located in Detroit, Michigan (*id.* at ¶ 14).  The Third-Party Complaint further alleges that Brian Altman executed a personal guaranty as an inducement for Dr. Poss to agree to perform podiatry services for Altman & Associates.  (*Id.* at ¶ 15.)   Finally, the Third-Party Compliant claims that on September 17, 2007, Altman & Associates, executed a Term Sheet affirming its agreement to purchase healthcare practices from Foot & Ankle and Metro Health.  (*Id.* at ¶ 16.)  Like the Amended Counterclaim, the Third-Party Complaint asserts that, in reliance upon both "the course of dealings between the parties as well as the agreements and Terms Sheet executed by Third-Party Defendants, Third-Party Plaintiffs made preparation for transfer of certain assets and healthcare practices to Third-Party Defendants (*id.* at ¶ 17) and were damaged when "Third-Party Defendants failed to fulfill their obligations to purchase the real property and complete the transfer of certain assets and healthcare practices from Third-Party Plaintiffs to Third-Party Defendants" (*id.* at ¶ 18).  The Third-Party Complaint asserts claims for breach of express contracts and breach of implied contracts.

On July 8, 2008, Altman & Associates filed a motion to dismiss the Amended Counterclaim, and Altman & Associates, Altman Holdings, and Brian Altman (collectively, the "Altman Entities" or "Third-Party Defendants") filed a motion to dismiss the Third-Party Complaint.  These motions were denied in part[2] on October 14, 2008,

---

[2]The motions were granted as to any claim for breach of an implied contract to sell real estate and denied in all other respects.

and ten days later the Altman Entities filed answers to the Amended Counterclaim and Third Party Complaint.

On December 5, 2008, the parties appeared for a settlement conference, and, consistent with the attorneys' specific request, another Article III judge presided over the conference.  The case did not settle, and Altman & Associates filed another motion attacking the Amended Counterclaim and the Third Party Complaint.  The motion also seeks the imposition of sanctions against the Poss Entities.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party must first show the absence of a genuine issue of material fact.  *Plant*

*v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III.  DISCUSSION

The viability of the Poss Entities' claims revolves around the existence and validity of certain disputed agreements allegedly executed in August of 2007 (the "August Agreements"). According to the Poss Entities, the August Agreements form one or more valid and enforceable contracts between the Poss Entities and the Altman

7

Entities, while the Altman Entities contend that a contract was never formed.  In the Altman Entities' motion for summary judgment, they contend that "[U]ndisputed facts have come to light that warrant immediate dismissal of the Third-Party Complaint and Counterclaim (collectively, the 'Counterclaim')."  (12/29/08 Mot. at 1.)  Specifically, the Altman Entities contend that "[t]he evidence unequivocally shows that the parties never reached agreement on the terms and conditions of the sale of the Property, and that as of August 17, 2007 Dr. Poss certainly did not agree to the terms and conditions contained in the August Agreements."  (*Id.*)

"The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Mallory v. City of Detroit*, 449 N.W.2d 115, 118 (Mich. Ct. App.1989) (citation omitted). "Before a contract can be completed, there must be an offer and acceptance.  Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed."  *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006) (citing *Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 540 N.W.2d 777 (Mich. Ct. App. 1995)).  A contract can be accepted by mail, and, in such cases, a contract is formed as soon as the acceptance is placed in the mail.  *Kutsche v. Ford*, 192 N.W. 714 (Mich. 1923); *see also Birznieks v. Cooper,* 275 N.W.2d 221, 228 (Mich. 1979) (Ryan, J., dissenting).

In this case, the Altman Entities contend that the August Agreements were never signed and that they never received the signed Agreements from Dr. Poss.  Instead, they assert that negotiations continued well into the fall of 2007 when they subsequently fell apart with no contract formed.  In response, the Poss Entities have submitted an

affidavit by Dr. Poss, in which he avers, under oath, that he signed the August Agreements on August 11, 2007 and placed them in the mail, thus accepting the Agreements and forming a valid contract. (Poss Aff. At ¶ 6.) He further avers that any further discussions or negotiations "were for the modification of those contracts and/or new contracts to replace the August 2007 agreements." (Poss Aff. at ¶ 8.)

In the face of this evidence, the court cannot accept the Altman Entities' argument that the facts are "uncontraverted" or even that only a scintilla of evidence exists to support the Poss Entities' claims. Rather, this is a situation in which the parties have provided facts supporting two competing versions of the same event. If the Altman Entities are to be believed, Dr. Poss's statements regarding further negotiations certainly could be construed to prove their allegations that no contract was formed and negotiations were on-going. However, the fact finder could conceivably accept Dr. Poss's contention that these subsequent negotiations were to modify the August Agreements, and, in fact, a valid contract had already been formed. In making this determination, the court specifically makes no finding on the *credibility* of Dr. Poss's statement. It is enough, at this early stage of the proceedings,[3] that the Poss Entities' have produced evidence which, if believed, could sustain their claim for breach of contract.[4]

---

[3] Discovery has not even begun yet in this case and, given the nature of the allegations, discovery could reveal additional evidence on either side of this issue.

[4] At this stage, the Altman Entities have only challenged the formation of the contract, not any of the remaining elements for breach of contract.

Finally, the court also rejects the Altman Entities' argument that, even if a contract was formed, the parties' subsequent behavior, as a matter of law, demonstrates that they rescinded the contract.  The facts are simply too undeveloped at this point to find that, contrary to Dr. Poss's affidavit, no contract was formed or, if it was, that the contract was rescinded.  Accordingly, summary judgment is not appropriate.

## IV.  CONCLUSION

IT IS ORDERED that Defendants/Counter-Plaintiffs/Third-Party Plaintiffs' motion for summary judgment and request for sanctions [Dkt. # 37] is DENIED.


     S/Robert H. Cleland          
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 6, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 6, 2009, by electronic and/or ordinary mail.

     S/Lisa Wagner          
Case Manager and Deputy Clerk
(313) 234-5522